Philip M. Kleinsmith
KLEINSMITH & ASSOCIATES, P.C.
6035 Erin Park Drive, #203
Colorado Springs, CO 80918
ID BAR #0905
1-800-842-8417
Attorney for Deutsche Bank National Trust Company, as Indenture
Trustee, for New Century Home
Equity Loan Trust 2006-2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: | ) Case No. 11-20808 |
| | ) (Chapter 13) |
| Judith Faie Cooper, | ) |
| | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| Deutsche Bank National | ) |
| Trust Company, as Indenture | ) |
| Trustee, for New Century Home | ) |
| Equity Loan Trust 2006-2, | ) |
| ITS SUCCESSORS AND/OR ASSIGNS | ) |
| IN INTEREST, | ) |
| Movant. | ) |

MOTION AND MEMORANDUM FOR RELIEF
FROM AUTOMATIC STAY ORDER
INCLUDING NON-MILITARY AFFIDAVIT

Movant, through its attorneys, moves this Court to enter its
Order granting Movant, its successors and/or assigns, relief from
the automatic stay order herein. As cause therefor, Movant makes
the following assertions of fact and legal authority:

1. Nature of Proceedings: (a) The Debtor (Debtor is used
regardless of the actual number of Debtors named above) has filed
a petition herein pursuant to 11 U.S.C.. By said petition and
pursuant to 11 U.S.C. 362, Movant, its successors and/or assigns
(Movant is used herein regardless of the actual number of Movants
named above) is stayed from any proceedings against Debtor and from
any action to obtain possession of any property of the Debtor or to
enforce any lien against any property of the Debtor.

(b)   Debtor is the owner of the hereinafter defined
"Mortgaged Property".

2.   Jurisdiction, Venue, Contested Matter.   (a)   This Court has jurisdiction of this matter under 28 U.S.C. 1334.   This matter is a core proceeding within 28 U.S.C. 157(a)(2).   Venue is proper in this District pursuant to 28 U.S.C. 1409(a).

(b)   This Motion is filed pursuant to 11 U.S.C. 362(d). It is a contested matter pursuant to F.R.B.P., Rules 4001 and 9014.

3.   Mortgage.   Movant, its successors and/or assigns, is the holder of a debt secured mortgage/deed of trust or contract for deed or security agreement (hereinafter "Mortgage")   attached hereto and incorporated herein by this reference as Exhibit 1.   The Mortgage has been properly recorded or filed to be perfected.   The present balance (principal, interest, etc.) on Mortgage is indicated on Schedule A also attached hereto and incorporated herein by this reference.   The periodic payment on Mortgage is also stated on Schedule A.

4.   Delinquencies.   The Mortgage   is   in default because Delinquencies indicated on Schedule B have not been paid, all of which are secured by Mortgage and the Mortgaged Property.

5.   Acceleration.   Because of the aforesaid defaults, Movant, its successors and/or assigns, has a right to declare all sums due on Mortgage to be   immediately due   and payable and, pursuant to the Mortgage has elected to foreclose on the Mortgaged Property.

6.   Mortgaged Property.   The Mortgage encumbers that property of this bankruptcy estate legally described in the attached Mortgage whose description is stated on Schedule A.   Said property - whether it consists of one or more properties - is here called Mortgaged Property.

7.   Statutory Bases for Relief from Stay.   (a)   11 U.S.C. 362(d) gives two numbered bases for relief from the automatic stay order.   These two numbered bases are better stated as three different bases for relief, specifically:

> (1)  For cause ("For Cause" Relief);
> (2)  Lack of adequate protection of the interest in property of such party in interest ("Adequate Protection" Relief);
>
> (3)  The Mortgaged Property:
>      (a)  debtor does not have any equity; and
>      (b)  is not necessary to an effective reorganization ("362(d)(2)" Relief).

(b)   11 U.S.C. 362(g) provides that the Debtor has the burden of proof under all of these bases for relief except that the Mortgaged Property has no equity.   If the Debtor produces no evidence on these points, the Movant, its successors and/or assigns, is entitled to relief without presenting any evidence whatsoever (In Re Gavin, 24 B.R. 578 [9th Cir. BAP 1982]).   The

Movant, its successors and/or assigns, has the burden of proof that
the Mortgaged Property has no equity.

    8.    "For Cause" Relief.   Movant, its successors and/or
assigns, has a right to relief from the automatic stay order
because  Debtor has not paid the Delinquencies (See Schedule B)
over a substantial period of time.    Specifically, in such
circumstances, it is the Debtor's burden of proof (See paragraph
7(b) above) to come forward with evidence that there will be a
reasonable probability of a sale of the Mortgaged Property which
will be profitable to this estate and/or that there will be a
successful reorganization within a reasonable time (United States
Savings Association of Texas v. Timbers of Inwood Forest
Associates, Ltd., 108 S.Ct. 626 [1988] and 11 U.S.C. 704(1), 1123
or 1322).

    9.    "Adequate Protection" Relief.   Movant, its successors
and/or assigns, has  a right to relief from the automatic stay
order unless Debtors make "adequate protection" payments to Movant,
its successors and/or assigns, to prevent the accrual of interest
on the Present Balance (See Schedule A) for which the Mortgaged
Property does not provide adequate security (11 U.S.C. 361).

    10.   "362(d)(2)" Relief.   Movant, its successors and/or
assigns, is entitled to relief from the automatic stay because
there is no equity in the Mortgaged Property and it is not
necessary to an effective reorganization.

    11.   Non-Military Affidavit.  The undersigned states that the
Debtor is not in the military service of the United States of
America nor its allies as evidenced by the attached Military Status
Report(s).

    WHEREFORE, the Movant, its successors and/or assigns, requests
the Court to enter the following Orders:
    (1)   Terminating, modifying, conditioning or annulling the
automatic stay order as to the Movant,  its successors and/or
assigns in interest, and the assertion of Movant's, its successors
and/or assigns in interest, rights against the Mortgaged Property
pursuant to the Mortgage;

    (2)   For such further relief as may be just in the premises.

                         Kleinsmith & Associates, P.C.
                         Attorneys for Movant


                         by____/s/Philip M. Kleinsmith___
                           Philip M. Kleinsmith,
                           ID Bar No. #0905
                           6035 Erin Park Dr., Ste. 203
                           Colorado Springs, CO  80918
                           1-800-842-8417

Acknowledged, subscribed and sworn to before me as true on
September 13, 2011, by Philip M. Kleinsmith at Colorado Springs,
Colorado.  My Commission Expires 02/14/2012.

                                    /s/Anjelica J. Smith
                                    Notary Public
                                    My Commission Expires 02/14/2012

                            Certificate of Mailing

        The undersigned hereby certifies that on September 13, 2011,
the electronic and/or copies (as indicated below) of the foregoing
Motion and Memorandum for Relief from Automatic Stay has been
served by electronic mail, or by depositing same in a U.S. mailbox,
postage prepaid to the following addresses:

                                        Electronic/Copies

Office of the Clerk                 1
United States Bankruptcy Court

Judith Faie Cooper                              1
9234 N Baack Road
Hayden, ID  83835

Judith Faie Cooper                              1
PO Box 1333
Rathdrum, ID  83858

C. Barry Zimmerman                  1           1
601 Sherman, Ave. Ste. 5
POB 1240
Coeur d'Alene, ID  83816

US Trustee                          1           1
Washington Group Central Plaza
720 Park Blvd, Ste. 220
Boise, ID  83712

Tayler S. Wirick                    1           1
250 Northwest Blvd.
Suite 107A
Coeur d'Alene, ID  83814

                                    /s/Philip M. Kleinsmith

Schedule A to Motion and Memorandum

Present Unpaid Principal Balance:  $76,844.15
Periodic Payment: $681.99
Late charges:      $30.61

Common Description of Mortgage Property:  9234 N Baack Road
                                          Hayden, ID  83835


LEGAL - See Attached Exhibit A




Schedule B to Motion and Memorandum


    Delinquent Monthly payments
    (7/11 through 8/11
    inclusive, at $612.34 per month
    9/11
    inclusive, at $681.99 per month)                    $1,906.67
    Late Charges (7/11 through 8/11
    inclusive, at $30.61 per month)               $    61.22
    Other:    Corporate Advance   $44.00
              Expense Advance     $35.00          $    79.00
    Attorney's Fees & Costs Herein               $   600.00

TOTAL ESTIMATED AMOUNTS PRESENTLY IN DEFAULT        $2,646.89


Schedule C to Motion and Memorandum

Valuation of Mortgaged Property          $85,000.00

File Ref.:  11-0315/FMC/CM/COOPER/ID

Philip M. Kleinsmith
KLEINSMITH & ASSOCIATES, P.C.
6035 Erin Park Drive, #203
Colorado Springs, CO 80918
ID BAR #0905
1 800-842-8417
Attorney for Deutsche Bank National Trust Company, as Indenture
Trustee, for New Century Home
Equity Loan Trust 2006-2

               IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF IDAHO

In re:                           )    Case No. 11-20808
                                 )    (Chapter 13)
Judith Faie Cooper,              )
                                 )
                     Debtors.    )
                                 )
_____            )
                                 )
Deutsche Bank National           )
Trust Company, as Indenture      )
Trustee, for New Century Home    )
Equity Loan Trust 2006-2,        )
ITS SUCCESSORS AND/OR ASSIGNS    )
IN INTEREST,                     )
                     Movant.     )

                       Notice of Motion for
                    Relief from Automatic Stay

     NOTICE IS HEREBY GIVEN Deutsche Bank National Trust Company,

as Indenture Trustee, for New Century Home Equity Loan Trust 2006-2

has filed a motion with this court for an Order granting it relief

from the automatic stay.

     Please take notice that pursuant to Local Bankruptcy rule

4001.2 and subject to Fed. Bankr R. 9006, any party in interest

opposing the Motion must file and serve an objection to the motion

**not later than seventeen (17) days after the date of service of the motion.**  The objection must specifically identify those matters contained in the Motion that are at issue and any other basis for opposition to the motion. **Absent the filing of a timely objection, the Court may grant the relief without a hearing.** In addition, as required by Local Bankruptcy rule 4001.2(d)(3), if an objection is filed to this motion, the objection must be served upon the movant and upon all parties receiving service of the motion.  In accordance with Local Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the Court's calendar clerk to schedule a preliminary hearing. At the time of filing the objection to a motion, the objecting party shall file and serve a notice of such hearing.

In addition, pursuant to Local Bankruptcy rule 4001.2(g) and 11 U.S.C. § 362(e), 30 days after a request under 11 U.S.C. § 362(a), such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.

                                    KLEINSMITH & ASSOCIATES, P.C.
                                    Attorneys for Movant

                                    By___/s/Philip M. Kleinsmith___
                                      Philip M. Kleinsmith
                                      ID Bar No. #0905
                                      6035 Erin Park Drive
                                      Colorado Springs, CO 80918
                                      (800)842-8417

Loan #: 1002214883

**Address:** 9234 N BAACK ROAD, HAYDEN, ID 83835  
**Borrower:** NA COOPER   **Project Type:**  
**Inspection Type:** Drive By   **APN:** 132684

## I. Order Information

| | | | | | |
|---|---|---|---|---|---|
| Inspection Date: May 12 2011 | Deal Name: | | | VMA Request ID: | |
| Client: | BPO Vendor: eMortgage Logic, LLC | | | Vendor Tracking ID: 1925207 | |
| Agent Name: Amanda Hartman | Brokerage: North Idaho Real Estate | | | Agent Phone: (208) 755-6551 | |

## II. Subject Property Information

| | | | |
|---|---|---|---|
| Occupied: Unknown | Property Type: SF Detach | HOA Fees: | Zoning: Residential |
| Last Sold Date: | Last Sale Price: | Data Source: County Tax | Currently Listed: Yes |
| Agent Name: Judy Cooper | Initial List Price: | Initial List Date: Jan 1 2010 | Current List Price: $96,900 |
| Last Reduction Date: Dec 28 2010 | MLS #: 10-72 | Total Repair Cost: $200 | Est. Monthly Rent: $750 |

**SUBJECT PROPERTY COMMENTS / EXTERNAL INFLUENCES:** This is a Central location with a mixture of new homes, condos and older homes. There is also really nice homes and not so nice homes

## III. Neighborhood Information

| | | | |
|---|---|---|---|
| Location Type: Rural | Supply/Demand: Increasing | Value Trend: Declining | Local Economic Trend: Depreciating |
| Price Range: 90000 to 465000 | | Median Price: $158,000 | Avg Marketing Time: 3 to 6 Mos. |

**NEIGHBORHOOD COMMENTS:** This is a mixture of really nice homes and then some not so great homes. Also there are big homes and smaller homes too

## IV. Comparable Properties

| | Subject | Sale 1 | Sale 2 | Sale 3 | Listing 1 | Listing 2 | Listing 3 |
|---|---|---|---|---|---|---|---|
| Address | 9234 N BAACK ROAD HAYDEN,ID | 9914 N MAPLE HAYDEN,ID | 3784 W MARIGOLD CT HAYDEN,ID | 3861 W KYLER AVE HAYDEN,ID | 9354 N ASH ST HAYDEN,ID | 9061 N MAPLE ST HAYDEN,ID | 7719 W ORCHARD AVE HAYDEN,ID |
| Zip | 83835 | 83835 | 83835 | 83835 | 83835 | 83835 | 83835 |
| Data Source | County Tax | MLS | MLS | MLS | MLS | MLS | MLS |
| Proximity | | 0.49 Miles | 1.31 Miles | 0.85 Miles | 0.26 Miles | 0.52 Miles | 0.67 Miles |
| Sale Price | | $53,285 | $94,500 | $125,000 | | | |
| Sale Date | | Jan 28 2011 | Apr 21 2011 | May 21 2010 | | | |
| Orig. List Price | $119,900 | $42,600 | $105,000 | $127,000 | $98,000 | $144,000 | $125,000 |
| Curr. List Price | $96,900 | | | | $98,000 | $139,900 | $109,900 |
| DOM | 497 | 38 | 97 | 133 | 163 | 55 | 52 |
| Lot Size | 0.2ac | 0.21ac | 0.2ac | 0.14ac | 0.27ac | 0.19ac | 0.26ac |
| View | territorial | territorial | territorial | territorial | territorial | territorial | territorial |
| Design/Style | Single Story | Single Story | Tri/Multi-Level | Single Story | Single Story | Single Story | Single Story |
| Type/#Units | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 | SF Detach 1 |
| Age | 69yrs | 101yrs | 16yrs | 15yrs | 29yrs | 18yrs | 36yrs |
| Condition | Average | Good | Good | Good | Average | Good | Good |
| Above Grade SF | 817 | 720 | 1,008 | 954 | 968 | 1,030 | 816 |
| # Rooms/Bd/Bth | 5  2  1 | 4  2  1 | 7  2  1 | 5  2  1 | 5  3  1 | 5  3  1.5 | 5  2  1 |
| Basement SF | | 0 | 576 | 0 | 0 | 0 | 0 |
| % Finished | % | 0% | 0% | 0% | 0% | 0% | 0% |
| Garage Type | Carport | None | Attached | Attached | Attached | Attached | Attached |
| # Garage Stalls | 1 | N/A | 2 | 2 | 1 | 2 | 2 |
| Pool/Spa | No   No | No   No | No   No | No   No | No   No | No   No | No   No |
| Other Features | Central location | storage building | Central location | quiet street | approved short sale | upgraded floors | wood floors |
| Sales Type | | REO | REO | Fair Market | Short Sale | Short Sale | Fair Market |
| HOA Fees | | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr |

**COMPARABLE PROPERTY COMMENTS:**

Sale 1: This home is similar to the subject because of the stats and proximity

Sale 2: this comp is comparable to the subject in proximity, sq ft and lot size

Sale 3: this comp is similar to subject because of the sq ft

List 1: very similar to the subject with sq ft, lot size and proximity

List 2: This home is a little bigger but close in proximity and lot size

List 3: this home is very similar to the subject in proximity and lot size also sq ft

## V. Marketing Strategy:

| | 'As-Is' Value | 'Repaired' Value | Estimated Marketing Time for Subject: 91-120 days |
|---|---|---|---|
| Estimated Sale Price: | $85,000 | $85,000 | **VALUE CONCLUSION SUMMARY:** |
| Recommended List Price: | $89,000 | $89,000 | There are not enough repairs to change the price if they are done- at least from just the outside- I am not sure what interior looks like |

## VI. Repair Estimates

| Category | Comments | Estimated Cost |
|---|---|---|
| Roof | | $0 |
| Siding/Trim | trim is missing around windows | $200 |
| Windows/Doors | | $0 |
| Paint | | $0 |
| Foundation | | $0 |
| Garage | | $0 |
| Landscaping | | $0 |
| Fence | | $0 |
| Other | | $0 |
| | **Estimated Exterior Repairs:** | $200 |
| Paint | n/a | $0 |
| Walls/Ceiling | n/a | $0 |
| Floors | n/a | $0 |
| Cabinets/Countertops | n/a | $0 |
| Plumbing | n/a | $0 |
| Electrical | n/a | $0 |
| Heating/AC | n/a | $0 |
| Appliances | n/a | $0 |
| Doors/Trim | n/a | $0 |
| Cleaning | n/a | $0 |
| Other | n/a | $0 |
| | **Estimated Interior Repairs:** | $0 |
| | **Total Estimated Repairs:** | $200 |

## VII. Prior Sales & Listing History

| Date Listed | Date Sold | List Price | Sale Price | Date Source | Notes |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## VIII. Additional Comments

**BROKER COMMENTS:**
This home is currently listed. It is a pretty nice area. Some old run down homes but very Central to shopping , beach and schools in Hayden. There was not too much repairs that I could see from the outside. This is a smaller home with a larger lot. It has been listed for almost 5 months at the $96,900 and it has not sold yet.I attest that I have researched the subject's sales history and found no sales within the past 3 years.

**VENDOR COMMENTS:**
QC Failure: Please revise or explain your probable as is and suggrested as is value in relations to sale 1. You state subject is most like sale 1.

**QUALITY CONTROL NOTES**
The square footage of Comparable List #2' this is not too much over the 200 ft mark and it is really close to the subject in proximity and lot size. The sales date for Comparable Sale #3:I was not able to find many comps that I felt would work within the time frame so I did have to go back a few more months. The sales date for Comparable Sale #1:there were not any other comps I felt would work so had to go back a few more months. The sales price for Comparable Sale #3:this home is higher in price because it is in great condition and also has a garage. The List price for Comparable List #2:This home is a little bigger and has upgrading flooring throughout the home also has a 2 car attached garage . The sales price for Comparable Sale #1:This home sold as an REO. The List price for Comparable List #3:This is higher because it has a garage. Sold Comp# 1 is most similar to the subject:this is most similar to the subject because of the lot size, sq ft & proxim. Active Comp# 1 is most similar to the subject:I think this is the best comp because of the sq ft, lot size and proximity.

Amanda Hartman

May 15 2011 4:07PM

Broker Signature
Broker agreed to digital signature upon submission.

Date

Neither Mortgage Logic, LLC nor any of it's affiliates, members, managers or contractors makes any representation or warranty as to the accuracy or completeness of the information contained in the broker price opinion. You show it use good faith efforts in determining that the content of all information to be provided is or obtained by you is accurate. This analysis has been performed by a licensed real estate professional and is intended for the benefit of the addressee only. The Brokers Price Opinion is not to be construed as an appraisal and may not be used as such for any purpose.



| Address | City | BR | BA | LotSize | SaleDate | Yr Blt | Sale/List Price | Dist |
|---------|------|----|----|---------|----------|--------|-----------------|------|
| 9314 N BAACK ROAD | HAYDEN | 2 | 1.0 | 0.7ac | | 1942 | | |
| 9534 N ASH ST | Hayden | 1 | 1.0 | 0.27ac | | 1982 | $98,000 | 0.26 Miles |
| 10001 N MAPLE ST | Hayden | 3 | 1.5 | 0.19ac | | 1993 | $150,900 | 0.52 Miles |
| 719 W ORCHARD AVE | Hayden | 2 | 1.0 | 0.26ac | | 1975 | $109,900 | 0.67 Miles |
| 9914 N MAPLE | Hayden | 2 | 1.0 | 0.21ac | Jan 28 2011 | 1910 | $53,285 | 0.49 Miles |
| 1757 W MARIGOLD CT | Hayden | 2 | 1.0 | 0.2ac | Apr 21 2011 | 1995 | $94,500 | 1.11 Miles |
| 861 W KYLER AVE | Hayden | 2 | 1.0 | 0.14ac | May 21 2010 | 1996 | $125,000 | 0.85 Miles |

When recorded, mail to:

**CARRINGTON MORTGAGE SERVICES**
Attn:  Foreclosure Department
1610 E  ST  ANDREW PLACE  SUITE B150
SANTA ANA, CALIFORNIA 92705

Trustee's Sale No:  02-NC-110203

# *NC110203011200000 0*

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, NEW CENTURY MORTGAGE CORPORATION, by these presents, grants, bargains, sells, assigns, transfers and sets over unto Deutsche Bank National Trust Company, as Indenture Trustee, for New Century Home Equity Loan Trust 2005-2, all beneficial interest under that certain Deed of Trust dated 6/23/2005  and executed by JUDITH F  COOPER, A SINGLE WOMAN, as Grantor, to STEWART TITLE, as Trustee, and recorded on 6/30/2005, under Auditor's File No  1961551, of KOOTENAI County, State of IDAHO, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

Trustee's Sale No. 02-NC-110203

Dated: _____

New Century Liquidating Trust Successor-in-Interest
to New Century Mortgage Corporation by Carrington
Mortgage Services, LLC as Attorney-In-Fact."

BY: _____

| Tom Croft | Sr. Vice President |
|-----------|---------------------|
| Name | Title |

STATE OF _____ )
                     ) ss.
COUNTY OF _____ )

On _____ before me, _____
personally appeared _____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and
that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC in and for the State of
_____ residing at _____
My commission expires: _____

# CONFIDENTIAL

## NOTE

June 23, 2005
[Date]

Hayden
[City]

Idaho

9234 N. BAACK ROAD, Hayden, ID

[Property Address]

Certified to be a true and
exact copy of the signed
original.
Stewart Title of Coeur d'Alene
By

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 80,750.00        (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of        8.350 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on August 1, 2005        .
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on July 1, 2035        , I still owe amounts under this Note, I
will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000 Irvine, CA 92612

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 612.34        .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal
is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. If I make a Partial Prepayment equal to
one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial
Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment at
any time. However, if within the first Thirty-six        months after the execution of the Deed of Trust, I make any
prepayment(s) within any 12-month period the total amount of which exceeds twenty
percent (        20 %) of the original Principal amount of this loan, I will pay a prepayment charge in an amount
equal to the payment of six        ( 6        ) months'
advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds
twenty        percent (        20 %) of the original Principal
amount of the loan.

IDAHO FIXED RATE NOTE - Single Family - With Prepayment Penalty
-105N(ID) (0305)
Page 1 of 3
9/03
VMP Mortgage Solutions (800)521-7291

1002214683

NOTE

# ⬤ONFIDENTIAL⬤

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of f i f t e e n    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5 . 0 0 0  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. APPLICABLE LAW

This Note shall be governed by the laws of the State of Idaho. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

1002214883

⬤ -T05N(ID) (0309)    Page 2 of 3



**CONFIDENTIAL**

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JUDITH F COOPER                    -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                      -Borrower

*[Sign Original Only]*

1002214883

-105N(ID) (0309)                    Page 3 of 3                                      9/03

# CONFIDENTIAL

1961561

Return To:
New Century Mortgage
Corporation
18400 Von Karman. Suite 1000
Irvine, CA 92612

STATE OF IDAHO
COUNTY OF KOOTENAI
AT THE REQUEST OF
STEWART TITLE OF COEUR d'ALENE

2005 JUN 30  P 4: 10

DANIEL J. ENGLISH  DB

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman. Suite 1000
Irvine, CA 92612

DEPUTY
FEE$ 52-

SW0-CC ——————[Space Above This Line For Recording Data]————————

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which I
together with all Riders to this document.
(B) "Borrower" is JUDITH F COOPER. A Single

Borrower is the trustor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corpor;

Lender is a Corporation
organized and existing under the laws of California

1002214883

IDAHO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3013 1/01

-6(ID) (0005).01
Page 1 of 18            Initials
VMP MORTGAGE FORMS - (800)521-7291

# CONFIDENTIAL

1961561

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is STEWART TITLE

(E) "Note" means the promissory note signed by Borrower and dated June 23, 2005
The Note states that Borrower owes Lender EIGHTY THOUSAND SEVEN HUNDRED FIFTY AND
00/100                                                                     Dollars
(U.S. $80,750.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

# CONFIDENTIAL

1961561

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                        of                        Kootenai                        :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: H-0450-24-097-AI                     which currently has the address of
9234 N. BAACK ROAD                                                              [Street]
Hayden                                          [City], Idaho 83835              [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

1002214883

VMP -6(ID) (0005).01                     Page 3 of 15          Initial         Form 3013  1/01

# CONFIDENTIAL

1961561

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6(ID) (0005).01                          Page 4 of 15          Initials: *QFC*

1002214883
Form 3013   1/01

1961561                    **CONFIDENTIAL**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith
by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings
are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien
which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP -6(ID) (0005).01                    Page 5 of 15                    Initials: _SFC_

1002214883

Form 3013  1/01

# CONFIDENTIAL

1961561

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 -6(ID) (0005).01

Page 6 of 15

Initials: QFC

1002214883

Form 3013  1/01

# CONFIDENTIAL

1961561

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

# CONFIDENTIAL

1961561

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(ID) (0005).01                                    Page 8 of 15                    Initials: _SFC_

1002214883

Form 3013  1/01

# CONFIDENTIAL

1961561

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(ID) (0005).01                    Page 9 of 15                    Initials $\mathcal{XFC}$

1002214883
Form 3013  1/01

# CONFIDENTIAL

1961561

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

# CONFIDENTIAL

1961561

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

 -6(ID) (0005).01     Page 11 of 15     Initials:    1002214883    Form 3013 1/01

# CONFIDENTIAL

1961561

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

# CONFIDENTIAL

1961561

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Area and Location of Property.** Either the Property is not more than 40 acres in area or the Property is located within an incorporated city or village.

-6(ID) (0505).01                    Page 13 of 16                    Initials: _____                    1002214883
Form 3013  1/01

1961561

# CONFIDENTIAL

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____      *Judith F Cooper* (Seal)
JUDITH F COOPER                                    -Borrower

_____      _____ (Seal)
                                                              -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                Borrower                                  -Borrower

1002214883

 -6(ID) (0005).01                    Page 14 of 15                    Form 3013  1/01

# CONFIDENTIAL

1961561

STATE OF IDAHO,                                                 County ss: Kootenai

On this   24th   day of  June,   2005                          , before me,

a Notary Public in and for said county and state, personally appeared

Judith F Cooper

known or proved to me to be the person(s) who executed the foregoing instrument, and acknowledged to
me that he/she/they executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this
certificate first above written.

Christina M. Lowe

Notary Public residing at:  Post Falls

exp.   05/10/10

# CONFIDENTIAL

1961561

*Legal Description*

The North 63 feet of the South One-Half of the East Half of Tract 97, AVONDALE, according to the plat thereof, recorded in Book B of Plats, page 32, records of Kootenai County, Idaho.

EXCEPT the West 25 feet thereof for road right of way.

Parcel Number: 11-0450-24-097-A1

# CONFIDENTIAL

1961561

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 23rd          day of June, 2005          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to New Century Mortgage
Corporation

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 9234 N. BAACK ROAD, Hayden, ID  83835

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

1002214883

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

VMP-57R (0411)
Page 1 of 3          Initials
VMP Mortgage Solutions, Inc.
(800)521-7291

# CONFIDENTIAL

1961561

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

1002214883

Initials: _____

# CONFIDENTIAL

1961561

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____Judith F Cooper_____ (Seal)          _____ (Seal)
JUDITH F COOPER        -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                              -Borrower


                                                          1002214883

VMP-57R (0411)              Page 3 of 3                Form 3170 1/01

**The value of the property has to be stated on the MFR, see Schedule C to the MFR.**
**An assignment to the proper party filing the motion must be attached to the MFR.**